Note.—Reported in 205 N. W. 222. See, Headnote, American Key-Numbered Digest, Perpetuities, Key-No. 4(14), 30 Cyc. 1500.

On Rev Code, Sec. 295, see annotations Kerr's Cyc. Codes, 1920, Civ. Code, Sec. 716.

---

BAXTER, Appellant, v. PARK, Respondent.

DOWD, Appellant, v. PARK, Respondent.

(205 N. W. 75.)

(File Nos. 5495, 5496. Opinion filed September 18, 1925.)

**Negligence—Infants—Damages—Contributory Negligence—Nuisance— Landowner Liable for Injury from Cave-in Under Doctrine of Attractive Nuisances, Though Act of Child Contributed to Injury.**

In action for death of children through cave-in of sand wall on defendant's excavated premises, it was error to grant defendant's motion for judgment notwithstanding verdict, on finding by jury that proximate cause of accident was excavations made by children, since under doctrine of attractive nuisances it is immaterial that affirmative act of child after reaching premises was proximate cause of injury.

Dillon, J., dissenting.

Appeal from Circuit Court, Codington County; Hon. W. N. Skinner, Judge.

Separate actions by Emma Baxter, as administratrix of the estate of Orville Claude Baxter, deceased, and by Mary Dowd, as

administratrix of the estate of John Joseph Dowd, deceased, against Herbert A. Park, to recover damages for death of plaintiffs' intestates. From judgments notwithstanding the verdict in each case, plaintiffs appeal. Reversed and remanded, with directions.

*McFarland & Kremer,* of Watertown, for Appellants:

*Mather, Stover & Mather* and *Hanten, Hanten & Henrikson,* all of Watertown, for Respondent.

Appellant cited: South, etc., Mfg. Co. v. Dakota, etc., Ins. Co., 2 S. D. 30, 48 N. W. 314; Edwards v. Chicago, etc., Ry. Co., 21 S. D. 507, 110 N. W. 833; Bates v. Fremont, etc., R. R. Co., 4 S. D. 400, 57 N. W. 73; Knight v. Fowles, 6 S. D. 579; Talty v. Atlantic, 92 Va. 125, 60 N. W. 516; Keefe.v. Mil. & St. P. Ry. Co., 21 Minn. 207; Decker v. Itasca Paper Co. (Minn.), 127 N. W. 183; Dirge v. Gardiner, 19 Conn. 507; Edington v. Ry. Co., 116 Ia. 410, 90 N. W. 95, 57 L. R. A. 561; Coppner v. Pennsylvania Co., 12 Ill. App. 600; City of Pekin v. McMahon, 154 Ill. 141, 45 A. S. R. 115; Olson v. Gill Home Invest. Co., 58 Wash. 151, 27 L. R. A. (N. S.) 884, 108 Pac. 140; Branson v. Labrot, 81 Ky. 638, 50 Am. Rep. 193; Price v. Atchison Water Co., 58 Kan. 551, 62 A. S. R. 625, 50 Pac. 450; Pueblo Electric Street Railway Co. v. Sherman, 25 Colo. 114, 71 A. S. R. 117; Snare & T. Co. v. Friedman, 94 C. C. A. 369, 169 Fed. 1; Pierce v. Lyden, 85 C. C. A. 312, 157 Fed. 552; Akin v. Bradley Engineering & Mach. Co., 48 Wash. 97, 14 L. R. A. (N. S.) 586, 92 Pac. 903; Edwards v. Chicago, M. & St. P. Ry. Co., 21 S. D. 504, 110 N. W. 832; Haynes v. Raleigh Gas Co., 114 N. C. 203, 41 A. S. R. 786; Western & Atlantic R. R. Co. v. Young, 81 Ga. 397, 12 A. S. R. 320; Elwood Electric St. Ry. Co. v. Ross, 58 N. E. 535; Stollery v. Cicero & P. Street R. Co., 343 Ill. 290, 90 N. E. 709; Powers v. Harlow, 53 Mich. 507, 51 Am. Rep. 154, 19 N. W. 257.

Respondent cited: Spade v. Lynn, etc., R. Co., 168 Mass. 285; Talty v. City of Atlantic, 92 Ia. 135, 60 N. W. 516; McCabe v. American Woolen Co., 124 Fed. 283; Chicago, Milwaukee & St. Paul Ry. Co., 154 Pac. 441; Emond v. Kimberly-Clark Co., 159 Wis. 83, 149 N. W. 760; Sullivan v. Huidekoper, 27 App. Case (D. C.) 154; 5 L. R. A. (N. S.) 263, 7 Ann. Cas. 196;

Peters v. Bowman, 115 Cal, 345. 47 Pac. 113, 56 A. S. R. 106; Thompson v. Ill. Cent R. Co., 105 Miss. 636, 63 So. 185, 47 L. R. A. (N. S.) 1101; Standal v. Boyd, 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, 72 A. S. R. 597; Richards v. Connell, 63 N. S. 915.; Slayton v. Freemont, E. & M. Valley R. Co., 59 N. W. 510; Omaha v. Bowman, 72 N. W. 316; United Zinc & Chemical Co. v. Britt, 258 Sup. Ct. 268, 66 L. ed. 615.

CAMPBELL, J.   By stipulation of counsel the two cases above were consolidated for trial, and are consolidated upon this appeal.

These cases were formerly before this court in a consolidated appeal from two orders sustaining demurrers to the respective complaints, and this court reversed said orders, holding that the complaints stated a cause of action. The decision is found in Baxter v. Park, and Dowd v. Park, 44 S. D. 360, 184 N. W. 198, and reference is made thereto for a statement of the facts involved.

Subsequent to that decision answers were interposed, issues joined, and the cases tried, and the jury in each case returned a general verdict for the plaintiff upon all the issues in the sum of $4,500.

At the request of the defendant a special interrogatory was submitted to the jury in each case in the following form:

"Q.  Was the digging and undermining of the west bank of the excavation by Orville Claude Baxter and John Joseph Dowd, with other boys, the cause of the accident?"

This interrogatory in each instance was answered by the jury by the word "Yes," and such interrogatory so answered was returned into court with the general verdict.

Thereafter the defendant in each case moved the court for judgment in favor of the defendant and against the plaintiff, notwithstanding the general verdict of the jury, which motions were granted by the learned trial judge, and judgments notwithstanding were entered accordingly. From these judgments the respective plaintiffs now appeal.

Our labors upon these cases have been materially lightened by the extremely able and careful briefs of counsel for both parties. Counsel for respondent have displayed in their briefs much learn-

ing and industry upon the question of whether the doctrine of the so-called "turntable" or "attractive nuisance" cases should be here applied. That general proposition was considered with great care by this court upon the former appeal, and was determined adversely to the contention of the respondent, and by that decision the law of these cases in that respect was established. From that decision we are not disposed at the present time or under the circumstances of these cases to recede.

There remains, therefore, for our consideration, only the question of whether or not the appellants at the trial brought themselves substantially within the allegations of their complaints. We have examined the record with care, and are convinced that this inquiry must be answered in the affirmative. That such was likewise the opinion of the learned trial judge at the conclusion of all the testimony is evidenced by his denial at that time of defendant's motions for directed verdict.

The only substantial distinction between the allegations of the complaints and the evidence developed at the trial is that while the death of the children occurred, as alleged in the complaints, from the caving of the walls of the excavation or gravel pit, the same was contributed to, and as found by the jury, proximately caused by, some shallow excavations in said wall which the children in their play had made therein, and in which they were at the time of the accident. It was apparently upon the strength of this special finding that the learned trial judge granted defendant's motions for judgment notwithstanding the general verdicts. This was error. If it be once admitted, as determined by this court on the former appeal, that the doctrine of the "attractive nuisance" cases is applicable to the situation of the instant cases, then it is entirely immaterial upon the question of liability whether the children at their play were merely sitting quietly at the foot of the bank or wall, and it casually slipped and fell upon them, or whether said caving of the bank was contributed to or proximately caused by the children excavating therein in the course of their play, as children might readily do. In any case where this doctrine has application at all, the fact that an affirmative act of the child in the course of his play, after he reached the dangerous and attractive premises or machinery, contributed to or was the proximate cause of the injury, cannot avoid liability. In practi-

cally all of these cases the child after reaching the premises acted affirmatively, and without such affirmative action the injury would not have happened.

Perhaps the foundation case for the doctrine herein involved, in the United States, is the decision of the Supreme Court in Railway Co. v. Stout (1873), 17 Wall. 657, 21 L. ed. 745. In that case the children in their play went to the unlocked turntable, and two of the boys began to turn the same, and in attempting to get upon it the foot of the plaintiff was caught between the end of a rail and the revolving turntable and crushed. It was the affirmative act of the children in their play in turning the turntable, after they arrived at the premises, which contributed to and was the proximate cause of the injury. In the instant case the making of the excavations by the children in their play is neither more nor less than analogous to the turning of the turntable in the Stout Case.

The judgments appealed from are reversed, and the cases are remanded, with instructions to enter judgment in each case in favor of the plaintiff and against the defendant upon the respective general verdicts of the jury.

DILLON, J. (dissenting). After reviewing the whole case, I do not think that the respondent landowner should be found liable. The case is now on trial on the question of whether the proximate cause of the deaths of the two boys, having been found by the jury to be an affirmative act of the boys, is sufficient to overturn the decision formerly made by this court upon demurrer. It is my opinion that the former decision of this court upon demurrer should be overruled and reversed. M. E. Smith & Co. v. Kimble, 38 S. D. 511, 162 N. W. 162; Larsen v. Johnson, 47 S. D. 202, 197 N. W. 230.

These actions were brought against a property owner by the mothers of two boys who were killed by the caving in of the side wall of an excavation, said excavation having been made for the purpose of obtaining sand. These cases were submitted to the circuit court of Codington county in February, 1920. The lower court then sustained the demurrer of the defendant, and an appeal was taken to this court in August, 1921 (44 S. D. 360, 184 N. W. 198). At that time the order of the trial court was reversed, this

court being of the opinion that the facts alleged in the complaint were such as to constitute a cause of action which should be submitted to a jury. These two actions were consolidated for the purpose of trial, since the complaints were identical. When the case was presented to the jury, a special interrogatory was submitted as to what was the proximate cause of the deaths of the two boys. The jury returned a verdict for the plaintiffs, and swered the special interrogatory in the affirmative, which resulted in the finding that the proximate cause of the deaths of the two boys was the digging of the cubby-holes in the embankment. The lower court overruled the verdict of the jury, ordered the dismissal of the action against the defendant, and ordered judgment for the defendant. It is from such order that this appeal is taken.

The appellants claim that the defendant landowner should have safeguarded all of the walls of the excavation, and should not have permitted children to use the property as a playground; that the landowner is guilty of negligence; that it was his duty to safeguard this wall from sliding; that he should have anticipated danger from this source; that because he was negligent in these respects he is liable for the death of the two boys; that the lower court erred in directing a judgment for defendant notwithstanding the verdict of the jury.

The respondent claims that he did fence said excavation on the east, south, and north sides and along the paved alleys by placing posts in the ground and placing on the posts two stringers of boards and one stringer of wire; that he had told children to keep out of there; that he knew there was clay mixed with the sand, which might be expected to act as a binder and prevent a cave-in.

The evidence shows that defendant landowner did have a fence around three sides of the excavation; that he had left the fourth side unfenced in order that refuse might be dumped in the excavation, and for the convenience of an auto service company, who used these premises in backing their cars out, turning them around, etc.; that the children who played in this excavation had been told, repeatedly, to get out, and they had been warned of the danger they were in; that the policeman, whose beat was near this excavation, had chased children out of the excavation several times; that several individuals at different times, had told the chil-

dren to get out of the excavation. Defendant landowner, in his deposition, stated that the evening before the accident he had commanded some boys to get out of the excavation, and told them to stay out, which they promised to do. The evidence shows that the two boys who were killed, with two others, did the digging of the holes in the embankment; that this excavation was in the business district of Watertown; that defendant landowner was not aware that the holes had been dug in the embankment. Testimony shows that the holes were dug only a short time previous to the accident. The chidren had, while playing in there, dug holes in the floor of the excavation, and had made little sand piles, and, had they continued playing in this manner, the boys would not have come to any harm  Evidence also shows that the accident was caused, not because the boys played in the sand, but because they dug holes in the embankment below that part of the embankment where trucks were driven, and that there was a rain the night preceding the accident.

These two boys who were killed lived in apartments in the business district of Watertown, and had no yards or playgrounds other than public places. One of the boys was 7 years of age, and one was 10 years of age. The accident occurred in the afternoon. The flat in which Orville Claude Baxter, deceased, lived was near this excavation, and it would seem that his mother had ample time to investigate the propriety of her son playing in this excavation, but is clearly shown from her testimony, that she did not take the precaution to do so. This mother admitted that, with the exception of John Joseph Dowd, deceased, she did not know who her son's playmates were; that her son had told her he was playing in a sand pile, but that she did not know where the sand pile was located. He never told her, and she never asked.

The mother of John Joseph Dowd, deceased, was keeping house for her children, and at 4:30 in the afternoon attempted to locate her son at the laundry, but, failing to do so, made no further attempt to learn his whereabouts, and did not know where he was until she was notified of the accident.

If these mothers were not interested enough in the welfare of their children to acquaint themselves of where they spent their playtime, should we relieve them of all responsibility and place the burden of looking out for the welfare of their children upon

this landowner?   Surely some responsibility must be fastened upon the natural guardians of the children.   In Ratte v. Dawson, 50 Minn. 450, 52 N. W. 965, it was held that a landowner was not liable for the death of a 3 year old child caused by the caving in of an embankment, when, at the time of the accident, the child was accompanied by her older sister.   It was held that this sister should have anticipated the danger and kept the child away from the embankment.   It is true that, in the case at bar, the children were not accompanied by any of their natural guardians, but it is also true that it was the duty of their natural guardians to know where they were playing and with what they were playing.   In the case of Holbrook v. Aldrich (1897), 168 Miss. 15, 46 N. E. 115, 36 L. R. A. 493, 60 Am. St. Rep. 364, Justice Holmes states:

"Temptation is not always invitation.   As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen."   Sexton v. Noll Const. Co., 108 S. C. 516, 95 S. E. 129.

This is a case where a child was injured by hot asphalt, and the owners were held liable because they did not warn the children and other people of the danger of getting too close to the vessel containing the asphalt.   It was held that:

"Generally, the owner or occupier of premises owes the same duty to adults and children, who go upon the premises by express or implied invitation.   As a general rule, he is not required to keep them in a safe condition for the benefit of trespassers or licensees, whether they are adults or infants.   A new duty does not arise until he maintains upon his premises a dangerous instrumentality, which tends to attract the youthful instincts of children, to use it for their amusement.   Where he has on his premises something that is both attractive and dangerous to children, he is bound to exercise ordinary care to prevent injury to them by coming in contact with it.   *   *   *   It must be made to appear that the negligence specified was the proximate cause of the injury."

The rule is thus stated in 21 Enc. of Law 485:

"A proximate cause, in the law of negligence, is such a cause as operates to produce particular consequences without the inter-

vention of any independent unforeseen cause, without which the injuries would not have occurred."

Sexton v. Noll, supra:

"It is true the duty is imposed upon the master to provide his servants with safe and suitable appliances, and to see that they are kept in proper repair; but this doctrine has never been extended so as to make it applicable to trespassers or licensees, whether adults or children, seeking attractive amusements." Kelly v. Benas, 217 Mo. 1, 116 S. W. 557, 20 L. R. A. (N. S.) 903.

This case is similar in a great many respects to the one under our observation. A child was killed by a pile of lumber falling upon him, and it was held that plaintiffs could not recover because "one applicable general rule of the law is that there must be a duty raised by the law and breached by defendant before an action for negligence lies. Another is that the landowner or occupant owes no duty to trespassers or volunteers, going upon his land for their own purpose, to maintain it in any particular condition for their benefit." It was further held in this opinion that trespassers and volunteers must take the premises as they find them, and assume the risk of injury resulting from going upon the premises to satisfy their curiosity or from motives of private convenience and the owner need not assume any responsibility from them driving, walking, or being on his premises without his invitation. The owner is "liable only for concealed spring guns, or other hidden traps, intentionally put out to injure them, or for any form of willful, illegal force used towards them." Sentiment is very easily aroused in questions of this sort where children are concerned, but "the law has not usually given them civil remedies on any such basis. Nor does it usually, if ever, impose any duties on strangers towards them resting entirely on the fact that they are children. * * * Shall he fence against adventurous, trespassing boys? Almost as well suggest 'that he build a wall against birds.'" If the landowners are to be held liable for all children that might trespass upon his land at any and at all times, it would be hazardous for any man to own property in any place.

In the case we are considering the landowner did not set any traps for these boys who were killed. His premises, where the excavating was done, were not a city playground, express or implied. In Harvard Law Review, 11, at is stated:

"It is alleged that he is in the position of one who sets a trap for the innocent; and he has even been spoken of as an active aggressor. The natural meaning of these strong expressions is, that the landowner actually intended and desired that the children dren should come upon his land, and that the changes upon his premises were made by him for the express purpose of attracting children to encounter peril, * * * But no sane man believes that people who are making beneficial use of their own land do in fact entertain the intention of thereby alluring children to their destruction."

In the case at bar defendant landowner permitted a contractor to excavate for sand on his premises without any profit to himself. No unbiased person could say that this was done for the purpose of alluring and enticing innocent children to the premises in order that they might be injured by the caving in of the embankment. These boys may have been attracted to the premises by the sand, but the jury found, on a special interrogatory, that the death of these two boys was caused, not because of the sand, but because the boys dug holes in the embankment.

Thomas v. C., M. & St. P. Ry. Co., 93 Iowa 248, 61 N. W. 969:

"The reason, as we understand it, why a trespasser cannot recover for injuries inflicted upon him by the negligence of another, is because the one who is negligent owes the trespasser no duty, and is not required to be on the lookout for him."

It is true that every one owes some duty to others, but the one is not required to be on the lookout to guard another person against injuries. One owes no duty to a trespasser unless one finds the trespasser in actual danger and then does not help him. When the duty once commences, no doubt a higher degree of care is required to avoid injuring a child than is required where the trespasser is an adult. But active duty commences no sooner in one case than in the other. The case of Thomas v. C., M. & St. P. Ry. Co., supra, "was presented to the jury on the theory that the child was a trespasser, pure and simple; and, as we have seen, the defendant did not owe it the duty to look out for it." Where there is no duty there can be no negligence, and we cannot expect this defendant landowner, in the case at bar, to act as an insurer for the safety of children who trespass upon his premises. It was

clearly shown by the record that the embankment had stood for some time, that trucks were continually passing near it, and at one time a Maxwell truck nearly went over the embankment, but still the wall did not slide. There can be no doubt that the digging of the cubby-holes in the wall contributed to the undermining of the embankment. In O'Hara v. Laclede Gaslight Co., 244 Mo. 395, 148 S. W. 884, it was held that the gaslight company was not liable for the death of a child caused by the falling down and rolling of a pipe which had been piled, with other pipes, in a public street. The pipes were piled in this street about 5 o'clock in the afternoon, and the accident occurred about 8 o'clock that evening. It was shown that the pipes must have been properly piled to prevent rolling, and that they would not have rolled if the children had not disturbed them, and the gaslight company "would not be liable for the unanticipated rolling of one of the pipes down into the street and its killing a child walking therein." Neither could the gaslight company anticipate that the children would be attracted by the pipes and use them for playthings. "Children will romp occasionally about any appliance, tool, or device they have access to; but only those which are apt to entice them into danger impose on the owner the duty of guarding against their intrusion. In fact, the turntable cases are anomalous, and it is the practice of the courts to carry their doctrine no further than the previous decisions compel."

The above cases, with others, are also reviewed by C. P. Berry in an article published in the Central Law Review, vol. 89.

In 1922, Herbert Goodrich, who at that time was acting dean of the College of Law and professor of law at the State University of Iowa, wrote a lengthy discussion on the "Landowner's Duty to Strangers on His Premises, as Developed by the Iowa Decisions." Iowa Law Bulletin, vol. 7, No. 2. It is stated in this article that in all of the Iowa decisions regarding a landowner's duty to those "present by invitation, express or implied," recovery was allowed only where plaintiffs were present on business, connected in some way with defendant's beneficial use of the premises. Mr. Goodrich states that "authority hardly seems needed for the undisputed rule that 'every unauthorized and therefore unlawful entry into the close of another is a trespass.'" Dougherty v. Stepp, 1 Dev. & Bat. (N. C.) 371.

"We should admit that a child who comes without permission to play upon a turntable or anything else on another's land is technically a trespasser. And children are at law liable for trespasses the same as adults. The admission does not necessarily mean that the proprietor incurs no responsibility by reason of the unwelcome visit. The structure of civilization would not be shaken if the law made an exception in favor of the child by cutting down the landowner's freedom from liability to trespassers. Such a change might impair the logical consistency of our rule. But logic is not necessarily law. The law is a practical science, having to do with the affairs of life, and any rule is unwise if in its general application it will not as a result serve the purposes of justice.' " Spade v. Lynn, etc., R. Co., 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 512, 60 Am. St. Rep. 393.

"To the trespasser the landlord owes no duty to put his premises in safe condition or repair, or even to give warning of latent danger." Burner v. Higman & Skinner Co., 127 Iowa 580, 103 N. W. 802; Davis v. Bonaparte, 137 Iowa 196, 114 N. W. 896; Upp v. Darner, 150 Iowa 403, 407, 130 N. W. 409, 32 L. R. A. (N. S.) 743, Ann. Cas. 1912D, 574; Sutton v. W. J. & S. R. Co., 78 N. J. Law 17, 73 A. 256.

"The fact that people do in fact trespass on the land of others puts no obligation on the owner to make things safe for them. But the immunity is given him only in using the premises for his own affairs. If he creates a dangerous condition for the purpose of harming the trespasser, he is liable for the latter's injuries." Hooker v. Miller, 37 Iowa 613, 18 Am. Rep. 18.

It is noteworthy that, with but two exceptions, every case taken to the Supreme Court of Iowa, where the plaintiff's claim was based upon this "attractive nuisance doctrine," since the Edgington Decision (Edgington v. Railway Co., 116 Iowa 410, 90 N. W. 95, 57 L. R. A. 561), recovery has been denied, though the court several times approved and affirmed the rule of that case. In his discussion on licenses, Mr. Goodrich states:

"We may consider a licensee one who comes on another's premises for his own purposes solely, with the owner's acquiescence or permission, through no contractual agreement with the owner. 29 Cyc. 451. With regard to claim for injuries resulting from the condition of the premises, the licensee is little better off

than the trespasser. He is not liable at law for his entry. But his situation resembles that of the trespasser in that he can claim from the landowner no general duty to make the premises safe or comfortable for his reception. He takes the place as he finds it. If he insists on looking his gift horse in the mouth, the law will not listen to his complaints about what he has found." O'Donnell v. Railway Co., 69 Iowa 102, 28 N. W. 464; Wilmes v. Railway Co., 175 Iowa 101, 156 N. W. 877, L. R. A. 1917F, 1024; Edgington v. Railway Co., supra: "His obligation is simply that which attaches to every member of society when he undertakes to exercise a personal right in a manner which may affect the welfare or safety of another member, the obligation of reasonable care."

In the case at bar, there can be no doubt that the boys were trespassers. The landowner never acquiesced in nor gave his permission for their presence upon his premises. Certain it is that they could not be called "invitees." An invitation cannot be implied from a mere toleration of trespassers." 20 R. C. L. 64.

Cooley on Torts (3d Ed.) 1265:

"An invitation may be inferred when there is a common interest or mutual advantage, a license when the object is the mere pleasure or benefit of the person using it."

There are many and diverse opinions as to the duty of property owners to keep their premises safe for children who may be attracted to them by the use made of the premises. Harvard Law Review, 11:

"It is impossible to carry on the common affairs of life without doing various things which are more or less likely to cause loss or inconvenience to others, or even which obviously tend that way. * * * To say that a man shall not seek profit in business at the expense of others is to say that he shall not do business at all, or that the whole constitution of society shall be altered."

If we impose upon the landowner the duty of keeping his premises safe for all who might trespass thereon, we may deprive him of the beneficial use of those premises.

This is a case of concurrent causes, and "where the negligence of two parties has contributed to an injury, it is a question for the jury to say whether it was the negligence of the one or

of the other that was the proximate cause of the injury. Where the evidence is conflicting as to whether the injury was the result of negligence or inevitable accident, the question is properly left to the jury." 29 Cyc. of L. 640. It must not be overlooked that when this case was submitted to the jury, the defendant moved for a directed verdict. This motion the court denied, but, at the request of the defendant, a special interrogatory was submitted to the jury as to what was the proximate cause of the accident. The jury returned a verdict for the plaintiff, and answered the special interrogatory by stating that the proximate cause of the accident was the "digging and undermining of the west wall by the deceased, with other boys." The lower court then dismissed the action against defendant and entered judgment for him. 8 L. R. A. Digest 9474:

"The court should direct a verdict for defendant in an action to recover damages for personal injuries, where the facts are undisputed, and, as matter of law, the alleged negligence was not the proximate cause of the accident." Teis v. Smuggler Min. Co., 85 C. C. A. 478, 158 F. 260, 15 L. R. A. (N. S.) 893.

This defendant landowner could not be held negligent for allowing a contractor to make beneficial use of his premises, even though such use might occasion risk to people trespassing thereon. Reasonable care is all that could be expected of him, and he could not be held negligent because he did not warn trespassers of dangers that were not readily apparent. The first excavation had been made some three years prior to the accident, and in all that time no one had attempted to dig in the walls of the excavation, and defendant landowner therefore could not be expected to anticipate that anyone would dig in the walls of the excavation. Harvard Law Review, supra:

"If the land is adjacent to a public highway, the owner may be liable for making changes on his land which endanger the safety of travelers who, notwithstanding their use of due care, accidentally deviate from the highway limits. But with this exception, the owner is not responsible for the condition of his premises to persons entering thereon without permission."

We are satisfied that the evidence given in the record is sufficient to prove that the digging of the holes in the embankment was the proximate cause of the injury. Defendant landowner

could not be expected to anticipate that the children would resort to this excavation for a playground, and, if they did, he had no reason to suppose that they might be injured or killed thereon. Defendant landowner moved for a directed verdict, on the ground, among others, that the plaintiffs had failed to prove any negligence on his part; that plaintiffs failed to prove it was his duty to make entry upon his premises safe for children trespassing thereon; that plaintiffs failed to prove that the walls of the excavation were of such a nature that they were liable to fall at any time. We have searched the record, and have failed to find any evidence tending to show that defendant landowner harbored any danegrous instrumentalities upon his premises. There is wholly wanting any evidence to show, even remotely, that the defendant landowner at any time maintained hidden traps or pitfalls on his premises, or that he at any time committed any act of willful neglect against the children trespassing on his property. The contractor who was doing the excavating testified that the quality of the sand in the wall, together with the clay binder in it, made a firm wall if let alone; that the quality of sand found in that bank would not slough off or down; that it does not move easily, but stands firm. The plaintiffs have wholly failed to prove that the defendant landowner was guilty of intentionally or wantonly bringing about the death of these two boys.

I am of the opinion that the finding of the jury on the special interrogatory should be controlling. I think the rule which exonerates a landowner from liability for injuries received, through no fault of his, by persons trespassing upon his premises, should be adopted in this case.

Note.—Reported in 205 N. W. 75. See, Headnote, American Key-Numbered Digest, Negligence, Key-No. 39, 29 Cyc. 464.