REDDY, Appellant, v. CITY OF WATERTOWN, Respondent.

(220 N. W. 851.)

(File No. 6009. Opinion filed July 28, 1928.)

*M. J. Russell* and *Irvin H. Myers,* both of Watertown, for Appellant.

*Howard B. Case,* City Attorney, of Watertown (*G. W. Case,* of Watertown, of counsel), for Respondent.

BROWN, J. At the time of the accident out of which this action arises, the city of Watertown owned and operated a municipal electric light plant. Block 14, about 350 feet square, was divided by an alley 20 feet wide running north and south through the middle of the block. A school, referred to in the record as the Sisters' school, with its playgrounds, was maintained on the east half of the block. On the west side of the alley, opposite the school grounds, there was a pole for the support of electric light wires. On this pole, 14 feet and 5 inches above the ground, was a platform of 2-inch plank, on which there was a transformer, the height of which was 2½ feet above the platform. Depending from a crossbar on the pole above the transformer, and at a height of 6 feet above the platform, there was a coil, known as a "choke coil," which was connected by a wire with the transformer. This choke coil and wire carried a voltage of about 2,200 volts, which in the transformer was reduced to 110 for use by consumers in their residences. The platform was composed of cross-stringers on which were nailed four planks on each side of the pole, leaving a gap or opening in the platform the width of the diameter of the pole, through which one climbing the pole could get onto the platform. There were spikes driven into the pole to enable workmen to ascend; the lowest being 32 inches from the ground, and the others at distances of 18 inches apart.

On November 6, 1923, some of the boys attending the school were playing during the noon recess, and Paul Reddy, a boy about 14 years of age, and another boy, had got a number of boys' caps. Paul climbed the electric light pole referred to, and the other boy a telephone pole across the alley, and began playing "catch," by throwing the caps across the alley to each other; Paul standing on top of the transformer. While thus engaged the Mother Superior arrived on the scene and ordered Paul to come down. He started to do so, and evidently in order to balance himself in descending from the transformer took hold of the choke coil and was instantly killed.

While the evidence shows that Paul was rather a backward

scholar, he was a leader in school sports, knew that electricity was dangerous, and lived in a home with his parents, where there were electric lights and an electric power washing machine. The day before the tragedy occurred the Sisters had warned the children not to climb the poles, had spoken to them of the danger incurred in so doing, and there is evidence that Paul was present when this admonition was given.

Plaintiff, as administratrix of the estate of Paul Reddy, brings this action to recover damages for his death, alleging that the city was negligent in maintaining the choke coil there, uninsulated and unguarded. At the close of all the evidence the court directed a verdict for defendant, and from a judgment dismissing the action on the merits, and an order denying a new trial, plaintiff appeals.

The school playground was divided into two parts, and to pass from one part to the other it was necessary to go through the alley and past this electric light pole. There was a shed, about 6 feet 9 inches high, within 9 inches of the pole. The only negligence claimed is in maintaining the pole in the alley, where children ordinarily would pass it, and where the proximity of the shed would facilitate climbing the pole, and maintaining the choke coil uninsulated and ungarded, without any danger or warning sign on or near the pole. The proximity of the shed certainly did not facilitate climbing the pole, as the cleats or spikes furnished a more ready means of ascent than first getting on top of the shed, and there is no evidence showing that the shed in any way facilitated the climbing of the pole. Erecting and maintaining the pole in the alley, where the children passed in going from one part of the playground to the other, was clearly no more inducement for children to climb the pole than if it had been erected in any other part of the alley, and unless the defendant should have reasonably anticipated that children would naturally be attracted by a transformer, attached to a platform 14½ feet above the ground, it cannot be said that it was negligent in maintaining the choke coil, uninsulated and unguarded, at a height of 6 feet above the platform.

We do not think the doctrine of the Turntable Cases, 17 Wall. 657, 21 L. Ed. 745, has any application to the facts in this case. Nobody could reasonably anticipate that any child would climb this electric light pole and, after having reached the platform, climb on top of the transformer, and there be exposed to danger by com-

ing in contact with the choke coil, 6 feet above the top of the platform. Even standing on top of the transformer, one would incur no danger from the choke coil, and defendant could not be expected to anticipate that any one would be likely to take hold of this choke coil, situated at a height of more than 20 feet above the ground, and which could not be reached by a boy of defendant's age without climbing the pole, getting through the gap onto the platform, and then getting on top of the transformer.

We cannot see that there was any negligence on the part of the defendant which contributed to the unfortunate death of this boy, and the judgment and order denying a new trial are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMPBELL, JJ,. concur.