**CARGILL, INCORPORATED, a Foreign Corporation, Appellant,**

**v.**

**Francis ZIMMER, Special Administrator of the Estate of Francis Zimmer, Jr., Deceased, Appellee.**

**No. 18461.**

United States Court of Appeals
Eighth Circuit.

March 28, 1967.

---

Francis M. Smith, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for appellant.

Carleton R. Hoy, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellee.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

The appellant seeks relief from a jury verdict and judgment in favor of the plaintiff-appellee, by reason of the alleged wrongful death of Francis Zimmer, Jr., age 12 years and 3 months. The verdict was in the sum of $15,482.00. Appellant owned property in Sioux Falls, South Dakota. At the property site were four steel grain storage tanks with a building and elevator immediately adjacent to them. Sometime prior to the accident in question, the feed merchandising operation was closed down and the silos were in minimal use.

Each of the steel silos was 35 feet in diameter and 72 feet high. At the top of the four silos is a "catwalk" and on the sides are steel ladders leading up to the top. Some of these ladders extend all the way to the ground, but the one in question was a ladder which commenced at a point approximately 7 feet from the ground. On December 23, 1963, the decedent and his friend, David Boever, age 14, had been playing at the public park immediately to the west of the defendant's premises. Falls Park is described as being directly west of the silos. It was shown children played in the park the year around. At approximately 3:30 p. m., the boys went to the northeast silo.

The photographs show a small "no trespassing" sign at the bottom of one of the tanks. There was no fence around the property. David Boever testified that they had climbed the ladders before to see if there were any pigeons at the top. The boys played on the premises at least once a week and no one had ever warned then against it. That afternoon the Boever boy boosted decedent onto the ladder and Francis proceeded to climb to the top. David Boever stated that he felt it was a pretty risky climb and that he told Francis that he did not want to go up because of it. Francis wanted to go up and check to see if there was anything up on top. After Francis got to the top, the Boever boy started to leave, heard a noise and turned around and saw him fall. The ground area below the silos was icy and slippery, but no one made any observation as to whether there was ice on the ladder or tank. The temperature was not proven but a police officer testified that it was a fairly warm day.

It was admitted by Cargill's plant manager that employees had occasionally found boys on their property. Pigeons frequented the buildings. The custodian of the property had been told to make the area as pigeon tight as possible, but this did not relate to the "head house" of the steel tanks but only to the elevator. The General Manager stated that:

> "The reason we told him [the custodian] to do this was that we knew there was a problem with pigeons and problems with young boys and the pigeons."

It was shown that any fence put up would not have interfered with any function for which the property was being used at the time of the accident. He advised the management that he was having a lot of trouble with visiting children but they did not send him any extra help.

The boy's father testified that Francis Zimmer, Jr., was a very active boy. He had observed him in the past climbing trees and on occasion had reminded him about the dangers of climbing.

The trial court submitted to the jury: (1) the contributory negligence of the

decedent under the South Dakota comparative negligence statute;[1] (2) the decedent's assumption of risk;[2] and (3) the issue of liability under the attractive nuisance doctrine in South Dakota and the Restatement of Torts, § 339.[3]

Appellant brings this appeal by reason of the lower court's refusal to grant a judgment notwithstanding the verdict. Appellant contends that the plaintiff's decedent was a trespasser on defendant's premises at the time of the accident, and that there was no breach of duty owed plaintiff's decedent by the defendant.

The five grounds set out by the Restatement of Torts, Second, § 339, as instructed upon by the trial court, are as follows:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

The question of the utility and the use of reasonable care to eliminate the danger were clearly submissible issues under the facts presented. And it is undisputed that appellant was aware of the children playing on the land and about the buildings. Appellant, however, argues with singular persuasion that the appellee has failed as a matter of law to prove (1) that the defendant created unreasonable risk (section b) and (2) that the decedent was not fully appreciative of the risk involved in climbing (section c). It is contended as a prerequisite to liability there must be a latent condition upon the land which imposes liability only by reason of appellant's superior knowledge of the danger presented to trespassing children. See the many cases collected in Schilz v. Kassuba, Inc.,

1. S.D.C.1960 Supp. 47.0304–1. See Judge Blackmun's discussion of contributory negligence and comparative negligence in South Dakota in Associated Engineers, Inc. v. Job, 8 Cir., 370 F.2d 633 (1966).

2. Ibid.

3. Both parties assume in their appellate briefs that the attractive nuisance doctrine in South Dakota is the same as the Restatement of Torts, Second § 339, dealing with occupiers of land. There exists a fundamental difference between the two doctrines. The doctrine of "attractive nuisance" is premised upon an allurement or attraction to the infant to the land. This factor is now eliminated from the Restatement of Torts. See Morris v. City of Britton, 66 S.D. 121, 279 N.W. 531. See this court's discussion of the rejection of the attractive nuisance doctrine in Minnesota and the adoption of the Restatement § 339, in E. I. DuPont

DeNemours & Co. v. Edgerton, 8 Cir., 231 F.2d 430. Few states still adhere to the stringent rule under attractive nuisance. E. g. see the discussion of the "playground doctrine" in Pardue v. City of Sweetwater, Tenn.App., 390 S.W.2d 683. It is reasonable to assume that South Dakota has accepted the Restatement view as shown by the discussion in Morris v. City of Britton, supra. However, a recent statement in Kuhn v. Watertown Cement Products Co., 75 S.D. 491, 68 N.W.2d 241, at 243, lends some doubt:

"If the plaintiff were not in the silo room in response to the *attraction* he was, in view of the warnings to him, in that room simply as a *trespasser*." (Emphasis supplied).

68 N.W.2d at 243. However, appellant did not object to the submission of the case under the Restatement doctrine, so we need not pursue this question.

27 Wis.2d 390, 134 N.W.2d 453, 456–457. South Dakota has adopted similar reasoning in the few existing cases in that state involving the attractive nuisance doctrine. See Morris v. City of Britton, 66 S.D. 121, 279 N.W. 531; McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485; and Kuhn v. Watertown Cement Products Co., 75 S.D. 491, 68 N.W.2d 241. The Supreme Court of South Dakota said in Morris v. City of Britton, supra, 279 N.W. at 533:

> " * * * liability is denied for the reason that the danger inherent in water when contained in a pond or pool is or should be *obvious* to a child, and such pond or pool *does not*, therefore, constitute 'an *unreasonable risk* of death or serious bodily harm' to trespassing children. This reason, we believe, also finds expression in the Restatement in the comments to the rule above set out. * * * " (Emphasis supplied)

■ All of the South Dakota child trespasser cases involve drownings in ponds or excavations, with the exception of *Kuhn*. There are no "fall" cases in South Dakota. However, the majority of courts throughout the country have looked upon "a fall" as being obvious to a child similar to the danger that is inherent in a pond or pool of water. Perhaps the best recognition of this rule is found in the Pennsylvania case of Mc-Hugh v. Reading Co., 346 Pa. 268, 30 A.2d 122, 123, 145 A.L.R. 319, wherein the court said:

> "*No danger is more commonly realized or risk appreciated, even by children, than that of falling*; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement, of their 'immature recklessness', but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type."

Complementing this rule is the principle of law recognized in Hocking v. Duluth, Missabe & Iron Range Ry. Co., 263 Minn. 483, 117 N.W.2d 304, at 317.

> "It seems to be well established in the law that liability does not attach to an owner or occupant for an injury to a trespassing child who climbs upon or jumps or falls from a nondefective and stationary structure, at least where the structure is useful and properly located."

■ Appellee's response to appellant's position is untenable. Argument is made that appreciation or knowledge of the decedent and his awareness of the obvious danger is only evidence of contributory negligence and should be determined under the comparative negligence statute in South Dakota. This approach completely overlooks that the plaintiff bears the burden of proving the five elements of the Restatement rule predicate to recovery. Appellee fails to recognize that as a prerequisite of proving an "unreasonable risk" there must be shown a nonobvious condition not otherwise appreciated by the child. This is essential to show the defendant has breached a duty. This was true under the older attractive nuisance cases as it is under the Restatement. Denial of liability under the attractive nuisance doctrine in the *Morris, McCleod* [4] and *Kuhn* cases was not premised on a finding of contributory negligence. [5] Recovery was

---

4. In *McCleod* recovery was allowed, but under a duty created by a city ordinance. McCleod v. Tri-State Milling Co., supra.

5. Some jurisdictions hold that contributory negligence is not applicable under the attractive nuisance doctrine since the plaintiff already assumes the burden of proving the child's inability to appreciate the risk. See e. g., Larnel Builders, Inc. v. Martin, Fla., 110 So.2d 649 (1959). We

denied because of the absence of proof of negligence since the condition involved was as obvious to the child as it was to the defendant. Analysis of the cases further demonstrates that the requirement of proving "an unreasonable risk" is premised on the defendant's foreseeability that the condition itself will not be obvious to a child. See Restatement of Torts, Second, § 339(b), Comment i, Illustration 5. In essence, this is an objective test of defendant's reasonable care under all existing circumstances. This is different from the subjective test of obviousness to the particular child under (c) of the Restatement rule. Thus, section (b) of the Restatement and the many cases dealing with this problem illustrate that negligence in these circumstances must be based upon some type of foreseeable harm. South Dakota long ago announced this doctrine in relationship to climbing children. See Reddy v. City of Watertown, 53 S.D. 349, 220 N.W. 851, wherein the court said:

"Nobody could reasonably anticipate that any child would climb this electric light pole and, after having reached the platform, climb on top of the transformer, and there be exposed to danger by coming in contact with the choke coil, six feet above the top of the platform." 220 N.W. at 852.

In submitting the case to the jury, the trial court was presented with the question of whether there was sufficient evidence for the jury to find that the defendant could have foreseen an unreasonable risk of harm to trespassing children. It is our function to determine if in submitting the case to the jury the district court reached a permissive determination of what the South Dakota Supreme Court would do with this same factual situation.

The "attractive nuisance" doctrine was introduced into South Dakota law by the case of Baxter v. Park, 44 S.D. 360, 184 N.W. 198, following the first "turntable" case, Sioux City and Pacific R. Co.

v. Stout, 84 U.S. 657, 21 L.Ed. 745. Although denying recovery for drowning in a pond, in McCleod v. Tri-State Milling Co., supra, 24 N.W.2d at 490, quoting from a Kansas decision, Somerfield v. Land & Power Co., 93 Kan. 762, 145 P. 893, the South Dakota Supreme Court said:

"There might be ground for the contention of appellees if the appellant had unnecessarily placed or *permitted* some attractive or dangerous structure to be placed on or over the canal that would impair the lives of children *attracted* there to play upon it." (Emphasis supplied)

We must be partially guided by cases in other jurisdictions which likewise follow the Restatement. Illustrative of this rule is Smith v. Evans, 178 Kan. 259, 284 P.2d 1065, where the Kansas court affirmed liability for the drowning of a 13 year old boy where a diving board was permitted to be placed at an abandoned sand pit. See also the recent Arizona case, Marble v. Parham, 3 Ariz.App. 585, 416 P.2d 1006 (1966) where liability of the landowner followed when a raft was erected and floated on a water hole. This is the viewpoint expressed in the Restatement, § 339, Comment j, wherein falling from a height is said to be fully understood and appreciated by any child of an age to be allowed at large, unless there exists " * * * a distracting influence which makes it likely that the child will not discover or appreciate it." Professor Prosser in his work on "Trespassing Children," 47 Cal.L.Rev. 427, at 459, states as follows:

"One may attempt to generalize by saying that whenever the court has * * * some plausible excuse—to say that there is an enhanced risk, greater than the ordinary risk which will normally accompany such a condition, the arbitrary rule is thrown into the discard. * * * for example, where some part of the danger has been concealed or masked, as in the

do not need to decide the question here, since the trial court submitted both as-

sumption of risk and contributory negligence of the decedent to the jury.

case of a deep hole in a muddy and apparently shallow pool, and the child can reasonably be expected not to discover it. * * * *also where there is some special attraction, such as a diving board* * * *also where the condition is* * * *near a* * * *public place, in which numerous children are likely to be found.* * * * likewise where the landowner knows of * * * trespasses, and * * * is made aware of an increased probability of some injury. There are a great many such cases; and since they turn upon factors which do not bear upon the child's appreciation of the risk at all, they tend to cast additional doubt upon the validity of any such fixed rules, and to suggest that each case must be considered in the light of all of its particular facts." (Emphasis supplied)

■■ Thus, we see the requirement of a latent defect is not an inflexible requirement under the law of attractive nuisance or the Restatement.[6] We feel a submissible issue of fact exists for the jury as to sections (b) and (c) of the Restatement, § 339, where: (1) the trespass was in an area known to be frequently used by children, and (2) the attraction involved creates a distraction of the actual danger to the extent that it is not fully appreciated by the child, notwithstanding the fact that (3) the structure itself did not contain a latent condition.

Minnesota decisions illustrate the contrasting distinctions. In the case of Slinker v. Wallner, 258 Minn. 243, 103 N.W.2d 377, two children climbed a dock at the rear of a restaurant onto a high wall and one slipped, falling into the water and drowned. Recovery was denied. However, the Minnesota court distinguished the cases of Heitman v. City of Lake City, 225 Minn. 117, 30 N.W.2d

18, and Davies v. Land O'Lakes Racing Ass'n, 244 Minn. 248, 69 N.W.2d 642, " * * * by indicating that in those cases dangers were allowed to exist in areas or places where children were known to play." See Hocking v. Duluth, Missabe & Iron Range Ry. Co., supra, 117 N.W.2d at 313. In *Heitman,* the child drowned by falling from a retaining wall to which children were known to be attracted in their play. In *Davis,* the child stepped into a pool of water adjacent to a child's playground. Both dangers were obvious under the law of Minnesota, yet recovery followed, emphasizing the knowledge of foreseeable harm by the defendant by reason of the attraction to the area of children.

Directly analogous to the present case is McGill v. United States, 3 Cir., 200 F.2d 873. Children "openly and notoriously" played around and in an unused Coast Guard tower on a beach area. A child slipped on a *stairway* ascending the tower and sustained serious injury. The Third Circuit found liability under New Jersey law applying the Restatement. *There was no latent condition involved.* [For factual analysis see the district court's opinion in 105 F.Supp. 719.]

■ South Dakota law does not require a landowner to make his land "child-proof." But at the same time we recognize that modern decisions in this area of the law increasingly acknowledge the humanitarian viewpoint that the life of a child is to be balanced as a heavy interest when weighed against the utility of simple precautions to guard against danger.[7] In applying the Restatement, § 339, no one of the five factors can be given isolated treatment in determining defendant's negligence. Their relationship is closely interwoven with one another in determining the basic question of whether there is a foreseeable harm.

---

6. Actually, the words "latent defect" are not used in the Restatement, nor do they appear in any South Dakota case that has been cited.

7. Justice Talbot Smith of the Michigan Supreme Court said in Lyshak v. City of Detroit, 351 Mich. 230, 88 N.W.2d 596, 1958, " * * * the right of a child to life and to life unmaimed outweighs the landowner's right to the exclusive possession of his property."

The knowledge of the appellant Cargill that children played on the silos, buttressed by their own employee asking for additional help in guarding against the trespass (and such request being ignored) is significant in the overall approach to foreseeable harm. Proof of the allurement involved is not necessary under the Restatement rule. However, it is of evidential importance in weighing the risk as to whether the defendant could anticipate full appreciation of danger by the decedent. The acknowledged fascination of children to a pigeon retreat at a height of 72 feet off the ground cannot be minimized. It is true Cargill was not in the pigeon raising business, but it nevertheless maintained an easy but dangerous access for children to investigate them. The steel ladder was an open invitation to a child's aviary. Decedent and other children did not climb the ladder for the thrill and excitement of climbing; the climb was secondary. The jury could find the attraction could focus attention of the child's interest from the true danger involved.[8] In Greene v. DiFazio, 1961, 148 Conn. 419, 171 A.2d 411, a boy of nine, while playing in a house under construction, attempted to cross a plank laid across an open stairwell to reach a ladder running to the first floor and fell injuring himself. The court said:

"The jury, on the basis of their knowledge of human nature generally and of children in particular, could have found that youngsters at the age and propensities of those who testified that they were in the habit of trespassing in this house would not ordinarily have realized the risk to which they were exposed." 171 A.2d at 414.

Whether there was a transparent coat of ice on the top rungs of the ladder or the thaw created a slippery condition or whether the youngster's mittens might have increased the uncertainty of his grip or whether he simply slipped and fell is really immaterial as far as the causative factor involved. In Baxter v. Park, 48 S.D. 506, 205 N.W. 75, the South Dakota Supreme Court stated:

"* * * Where this doctrine [attractive nuisance] has application at all, the fact that an affirmative act of the child in the course of his play, after he has reached the dangerous and attractive premises or machinery, contributed to or was the proximate cause of the injury, cannot avoid liability. In practically all of these cases the child after reaching the premises acted affirmatively, and without such affirmative action the injury would not have happened."

In order for the question of obviousness of the danger to be one of law and to remove the legal duty of the defendant landowner to trespassing children, different circumstances than presently exist are required. E. g. Pardue v. City of Sweetwater, supra, and Stimpson v. Bartex Pipeline Co., 120 Tex. 232, 36 S.W.2d 473.

---

8. In Hyndman v. Penn. Ry. Co., 1959, 396 Pa. 190, 152 A.2d 251, the Pennsylvania court reflected:

"As the testimony in the record shows, this tower had been climbed many, many times in the past without any injury occurring. A jury could properly conclude from this that the minor appellee would reasonably assume that no danger existed because of the successful climbs in the past." 152 A.2d at 255.

See Brown v. So. Calif. Edison Co., 120 Cal.App. 102, 7 P.2d 770 [spikes on telephone pole leading to transformer constitutes an implied permission to climb]; Melford v. Gaus & Brown Construction Co., 17 Ill.App.2d 497, 151 N.E.2d 128, 66

A.L.R.2d 528 (1958), [child playing tag fell backward over front edge of a wooden platform adjacent to an obvious excavation for a new building]; Stevens v. Ohio Fuel Gas Co., Ohio Com.Pl., 1960, 193 N.E.2d 317 [fall from pipeline affixed to public bridge where defendant knew that children played and walked upon it]; Harris v. Mentes-Williams Co., 11 N.J. 559, 95 A.2d 388 (1953), [fall into furrow four feet deep in lot adjacent to school used as a playground]; Runions v. Liberty Nat'l Bank, 15 Ill.App.2d 538, 147 N.E.2d 380 (1957) [fall off of garage owned and maintained by a landlord where a ladderlike arrangement existed to get to the garage roof].

South Dakota originally followed the progenitor of the attractive nuisance doctrine found in Sioux City & Pacific R. Co. v. Stout, supra. When faced with the question of defendant's negligence and legal duty involved, the court through Mr. Justice Hunt stated:

" * * * Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." 84 U.S. at 664.

The same observation is cogent here. We find that the trial judge did not err in submitting defendant's negligence to the jury.

Judgment affirmed.