**Johnny ANDERSON, A Minor by His Mother and Next Friend, Rosemary Anderson, Appellant,**

**v.**

**David F. CAHILL d/b/a D. F. Cahill Construction Co. and K. L. Perry Excavating Co. formerly d/b/a K. L. Perry & Sons, Inc., Respondents.**

***No. 56009.***

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1972.

Motion for Rehearing or Transfer to Court En Banc Denied
Oct. 9, 1972.

Roger J. Barbieri and Commodore M. Combs, Jr., Kansas City, for appellant.

David H. Clark, Robert E. Northrip, Kansas City, for respondent Cahill.

Lowell L. Knipmeyer, Douglas H. Delsemme, Knipmeyer, McCann & Millett, Kansas City, for respondent, K. L. Perry Excavating Co.

FRED E. SCHOENLAUB, Special Judge.

In this action for personal injuries, the trial court sustained defendant's Motion for Directed Verdict at the close of plaintiff's case and plaintiff appeals. Plaintiff was injured when he fell into a ten foot deep excavation on the premises of St. Mary's Church in Independence, Mo. At the time of his injury, October 13, 1962, plaintiff was four years ten months of age.

Defendant Cahill had entered into a construction contract with the church diocese to build an addition to the church. Construction commenced on September 5, 1962. Thereafter, and prior to October 13, 1962, defendant Perry, at the direction of defendant Cahill, dug the rough excavation for the foundation wall footings. This was the extent of defendant Perry's work. Employees of defendant Cahill then erected forms for the foundation, poured the concrete, and were completing work on the foundation when plaintiff was injured. The depth of the excavation pit was approximately ten feet, the space between the foundation wall and the side of the excavation approximately two feet.

Defendant Cahill erected snow fence to separate the construction area from an elementary school and a high school on the church premises and from the entrance to the basement of the church where services were held during construction. The construction area was accessible from Liberty Street through a driveway between the church and elementary school, blocked by a crossbar two to three feet above the ground, and through a two and one half to three foot passageway between two construction sheds and the high school, opening onto a driveway between the rectory and the playground on the corner of the church premises.

Plaintiff lived with his parents and sisters at 211 West Farmer in Indepencence, 125 to 150 feet from the nearest edge of the playground. Plaintiff, with his sisters Kathy, age seven, and Roxie, age six, had been sent by their mother to a grocery store on the southeast corner of College and Main, northeast of the Anderson home and beyond the playground and construction area. They strayed from their errand and found their way into the construction area. At approximately 4:30 P.M., Virgil C. Julian and his brother-in-law, Edwin T. Davis, were looking over the construction job while waiting for Mr. Davis' wife, who was attending church services. They were there fifteen to twenty minutes when Mr. Julian looked up and saw plaintiff going into the excavation pit head first.

Plaintiff contends he made a submissible case under Section 339, Restatement of the Law, Torts, First (1934), and that the trial court erred in directing a verdict for defendants at the conclusion of his case. Missouri has adopted Section 339. Arbogast v. Terminal Railroad Association of St. Louis, Mo., 452 S.W.2d 81; Salanski v. Enright, Mo., 452 S.W.2d 143. Section 339 reads as follows:

"A possessor of land is subject to liability for bodily harm to young children

trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

In overruling plaintiff's Motion for New Trial, the trial judge held Section 339 not applicable, noting a lack of evidence as to how the children got onto the premises, the magnetism of activities at construction sites in attracting children and others, the impracticability of sealing such sites against small children, and the ability of children of any age, including plaintiff, to realize and appreciate the risk involved in falling from high places. In addition, defendant contends plaintiff's evidence failed on each element of Section 339.

In the Comment (p. 920) on Clause (a) the Restatement says:

"It is not necessary that the defendant should know that the condition which he maintains upon his land is likely to attract the trespasses of children or that the children's trespasses shall be due to the attractiveness of the condition. It is sufficient to satisfy the conditions stated in Clause (a) that the possessor knows or should know that children are likely to trespass upon a part of the land upon which he maintains a condition which is likely to be dangerous to them because of their childish propensities to intermeddle or otherwise. Therefore, the possessor is subject to liability to children who after entering the land are attracted into dangerous intermeddling by such a condition maintained by him although they were ignorant of its existence until after they had entered the land, if he knows or should know that the place is one upon which children are likely to trespass and that the condition is one with which they are likely to meddle."

■ The construction site was located in a residential area on premises occupied by a high school with an enrollment of 200 to 250 students and an elementary school with an enrollment of approximately 400 students. A jury could reasonably find that defendant should have anticipated the presence of children in the area and the possibility that one of them might find his way into the construction site. Defendant points to the absence of any evidence of trespass from the time work began on September 5, 1962 until the time plaintiff was injured on October 13, 1962. Monsignor Froeschl, pastor of St. Mary's Church, testified that the school children had been forbidden to go into the construction area and that he knew of no incidents in which any child had been there. These are facts to be considered by a jury in determining whether or not defendant knew or should have known that children were likely to trespass, but the fact that plaintiff's injury was not preceded by a history of known trespass cannot excuse the defendant if he could reasonably have foreseen the likelihood of the presence of children at the construction site.

■ Defendant also argues that the passageway between the high school and construction sheds was a distance of 100 to 150 feet from the playground area and a distance of 240 to 260 feet from Liberty Street, with no part of the excavation site visible from that opening. This, of course,

would have precluded recovery prior to the adoption of Section 339, when a possessor of land was liable only if the condition causing the injury enticed or lured the child into exposing himself to the danger. Adoption of Section 339, however, eliminated the element of allurement and enticement. This constitutes the fundamental difference between the Restatement rule and Missouri's earlier attractive nuisance doctrine. The distances from the playground and Liberty Street to the construction site may now be considered, along with other evidence, only in determining the foreseeability of trespassing children.

The excavation pit was approximately ten feet deep with water covering the bottom and with metal form ties protruding from the foundation wall into the opening. A jury could find such condition to be one which defendant knew or reasonably should have known involved an unreasonable risk of death or bodily harm to trespassing children.

Defendant further contends that a court would be justified in ruling as a matter of law that a normal child four years and ten months old has sufficient mental development to appreciate the risk of falling into an excavation, and that defendant would not, therefore, be liable for any injury sustained in such a fall.

Both Arbogast v. Terminal Railroad Association of St. Louis, Mo., supra, and Salanski v. Enright, supra, involved children falling from heights. In Arbogast a twelve year old girl fell from a high unguarded railroad trestle spanning a deep ravine and creek bed. Citing 65 C.J.S. Negligence § 63(91) b, 16 A.L.R.3d 102, this court held that a child is bound to appreciate the simple and obvious danger of falling from an object or structure but is not bound to appreciate a danger presented or exaggerated by a defect in the structure or other peculiar circumstances which is hidden from the child or which a child would fail to appreciate because of his immaturity. The court went on to hold that the unguarded trestle in and of itself did not involve a circumstance the danger of which a twelve year old child would fail to appreciate. Salanski involved a fall from a tree house thirty feet above the ground. The court noted that such tree houses hold a special attraction to children who are frequently inattentive to their surroundings, and that the desire of getting to and enjoying the tree house could be so distracting that they would not discover or appreciate the danger involved. The court cited Cargill, Inc. v. Zimmer (CCA8), 374 F.2d 924, where recovery was upheld under Sec. 339 in South Dakota for the death of a twelve year old boy who fell from the top of a 72 foot high silo which he had climbed looking for pigeons. In that case the court noted the acknowledged fascination of children to a pigeon retreat, enabling the jury to find the attraction such as could focus attention of a child's interest from the true danger involved.

In the Comment (p. 923) on Clause (b) the Restatement says:

> "An artificial condition may be peculiarly dangerous to children because of their tendency to intermeddle with things which are notoriously attractive to them, but this is not the only childish characteristic which may make an artificial condition, which involves no serious risk to an adult, highly dangerous to children. Children are notoriously inattentive to their surroundings, and this characteristic may make it unlikely that children will discover a condition which would be obvious to an adult. The lack of experience and judgment normal to young children may prevent them from realizing that a condition observed by them is dangerous or, although they realize that it is dangerous, may prevent them from appreciating the full extent of the risk."

In overruling plaintiff's Motion for New Trial, the trial judge noted that such construction sites "held magnetism to children and others." Such a construction site with its accompanying sand, rock and material

piles, might certainly be distracting to trespassing children and a jury could find it so distracting that this young plaintiff, while playing within such an area, would not discover or appreciate the risk of falling into the excavation located therein.

Respondent further contends that no evidence was produced to show how plaintiff entered the premises and that he cannot, therefore, he held to have been negligent in failing to properly fence or barricade the area causing plaintiff's injury. The question, however, is not how plaintiff entered the premises, but whether reasonable precautions had been taken to prevent entry by trespassing children. A jury could find that such precautions were not taken and that the cost to defendant of providing fencing to prevent entry would have been slight compared to the risk to young children who might trespass therein.

A prima facie case was made under Section 339. The trial court erred in sustaining defendant Cahill's Motion for Directed Verdict.

The order of the trial court in directing a verdict in favor of defendant Perry at the close of plaintiff's case is affirmed. Plaintiff failed to establish any control of the premises by defendant Perry, whose only participation in the construction was in digging the excavation for the foundation. This work was done at the direction of defendant Cahill. Defendant Perry was never in possession of the premises.

Inasmuch as the case will be retried as to defendant Cahill, we will consider plaintiff's allegation that the trial court erred in rejecting the testimony of witness Alfred Benberg concerning the adequacy of the barricading methods employed by defendant Cahill. In Housman v. Fiddyment, Mo., 421 S.W.2d 284, quoting from Benjamin v. Metropolitan St. Ry. Co., 133 Mo. 274, 34 S.W. 590, this court held:

"An expert witness, in a manner, discharges the functions of a juror; and his evidence should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved."

Sufficient evidence was presented from which a jury should be able to intelligently evaluate the barricading necessary to prevent entry by children into the construction site and whether the fencing provided by defendant was adequate for this purpose. We find no error in rejecting this evidence.

The judgment is affirmed as to defendant Perry. The judgment is reversed and the cause remanded for a new trial as to defendant Cahill.

All of the Judges concur.