Hyndman *v.* Pennsylvania Railroad Company, Appellant.

Argued January 6, 1959. Before JONES, C. J., MUSMANNO, JONES, COHEN and McBRIDE, JJ.

reargument refused July 2, 1959.

· *Theodore Voorhees,* with him *Gordon W. Gerber,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*Elwood S. Levy,* with him *Charles A. Lord, Seymour I. Toll,* and *Richter, Lord & Levy, for* appellees.

OPINION BY MR. JUSTICE COHEN, May 8, 1959:

This is an action in trespass brought by Ronald Kenneth Hyndman, a minor, by his mother Elizabeth W. Hyndman as his guardian and in her own right, against the Pennsylvania Railroad Company (appellant). The minor appellee suffered serious electrical burns when he came in contact with a portion of the transformer apparatus housed on a platform affixed to appellant's catenary pole near Langhorne, Pennsylvania, along the railroad right-of-way. The jury returned a verdict in favor of plaintiffs.

This is an appeal from a denial of defendant's motion for a new trial and for judgment n.o.v.

It is a well established rule that in considering motions for judgment n.o.v. the court must consider the evidence in the light most favorable to the appellee resolving all conflicts in his favor and giving him all favorable inferences usually adducible from the evidence. *Bartleson et al. v. Glen Alden Coal Co.,* 361 Pa. 519, 64 A. 2d 846 (1949); *Phillips v. Philadelphia Transportation Co. et al.,* 358 Pa. 265, 56 A. 2d 225 (1948). The following facts amply supported by the record could have been found by a jury.

At the time of the injury, the minor appellee was eleven years and seven months of age. He was a tenderfoot with a boy scout troop which occupied a regular camp site about twenty-five feet from the railroad's right-of-way. This camp was located approximately fifty feet from the catenary pole where the injury occurred.

The pole was a steel column, fourteen inches square imbedded in a concrete foundation located about eight feet from the nearest track rail. It had a metal ladder beginning twenty-two inches above the ground leading to a steel platform at the twenty foot level where the transformer apparatus was located. The platform had a railing on three of its sides, but the side next to the ladder had no railing. There was thus an open access from the ladder to the platform. The ladder extended nine or ten inches from the side of the pole and was fastened to it by means of steel brackets. It had rungs running its entire length spaced fifteen inches apart. The bottom seven feet of the ladder was faced with a one-eighth inch metal plate, seven and a half inches wide, which the defendant termed an "anti-climb gate." The rear side of the ladder had no such device on it. This gate was locked in a closed position with a padlock. The rungs of the ladder on the inside were unprotected by the gate; so also were the side brackets, the first of which was eighteen inches above the ground and the second four feet above ground level. Also along the side of the ladder was a hasp lock. After the first seven feet, which was covered by this gate, the rest of the ladder running up to and beyond the platform was completely unprotected.

The platform was so constructed that one could step directly on to it from the ladder. The transformer apparatus was affixed to the platform. From this apparatus there were two parallel vertical wires twenty-one inches long leading from above the platform down to the top of the transformer. Although these two transformer wires carried 6600 volts, they had only "light insulation" of rubber and copper cotton braid one-sixteenth of an inch thick. This insulation was sufficient to give protection against brush contact by clothing in dry weather only. It was not a safeguard against anyone who might touch the wire or come in

contact with it during rainy weather. The only purpose of the platform was to support the transformer. This catenary pole with the platform and transformer located on it was the only such pole in the immediate vicinity. At the time of the accident there were no warning signs of any kind either on the tower or in the camp area.

This camp site was regularly frequented over a long period of time prior to the happening of this accident. Ingress and egress from the camping area was obtained by means of a path along appellant's right-of-way. Also, there is ample evidence in the record that appellant's trains passed this site regularly and its employees had noticed that the scouts were in the area. There was testimony that the scouts waved to the passing trains and received waves in return. Several of appellant's employees had stopped and talked with the various scouts in the area and knew they were present near this particular site.

From the record it is apparent that the appellee was not the first one to climb this pole. In fact, it appears that many scouts from the time of their initial use of this area camp site had climbed this pole and reached the platform.

On the day of the injury, the minor appellee, unaware of the danger, climbed the ladder on the side away from the track, using the supporting brackets, hasps, locks and inside rungs as steps. He climbed past the so-called "anti-climb gate" and then continued up the ladder using the rungs until he reached the platform. After he was on the platform, and was about to descend, he placed his left hand on what he thought to be a pipe. It was in fact one of the two parallel drop lines or wires leading into the transformer which was only slightly insulated. It had rained throughout the day and the insulation and part of his clothing were wet. The electrical contact threw the minor appellee

from the platform to the ground. As a result he suffered extremely severe electrical burns on various parts of the body.

Appellant's first contention that the lower court was in error in refusing to grant a judgment n.o.v. is without merit. The railroad's liability was based upon Section 339 of Restatement, Torts which provides as follows: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

This section has been adopted in toto by this Court as law of the Commonwealth: *Dugan v. Pennsylvania Railroad Co.*, 387 Pa. 25, 127 A. 2d 343 (1956). There is no question, but that the appellees had to satisfy all four sub-sections of Section 399 in order to recover. The appellant concedes that the appellees introduced sufficient evidence to satisfy the burden of sub-section (a), but he maintains that this requirement was not met as to the remaining sections.

The appellant urges, with regard to clause (b), that the pole carrying the wires and holding the platform upon which the transformer was located was not a "condition" due to the fact that the so-called "anti-

climb gate" prevented normal climbing of the ladder. The appellant conceded that a tower carrying high voltage wires with a ladder leading from the ground to the wires and with the rungs *entirely unguarded* satisfied Section 339(b), so as to charge the owner with the affirmative duty of taking all necessary precaution to eliminate the hazard. Appellant was also aware that the insulation for the two drop wires was very slight and not sufficient for brush contact in rainy weather. The question then presented is whether or not the "anti-climb gate", which the defendant put on the lower seven feet of the ladder, was a sufficient precaution. There is more than ample evidence in the record that aside from the minor appellee, many of the boy scouts had climbed this tower since this area was first used as a camp site. The overwhelming preponderence of the evidence indicated that the metal plate had no significant effect in blocking access to the ladder, and hence to the platform.

Appellant continually urges throughout his argument that the "anti-climb gate" protected the ladder from children and successfully blocked access. These are conclusions which have no basis in the record. On the contrary, it appears that this metal plate offered no protection whatsoever and, in certain instances, facilitated the climbing of the ladder due to the position of the side brackets and the hasps from which children climbed onto the unprotected part of the ladder. In *Bartleson v. Glen Alden Coal Co., supra*, the defendant maintained a forty-five foot tower supporting 4000 volt wires; the base of the tower was enclosed by a fence seven feet high containing panel gates which, four days before the accident, had been fastened in a closed position with two strands of wire. The plaintiff in that case, aged eleven years and eight months, had previously played in the area. For years other children also played games in the immediate proximity

of the tower. The plaintiff entered the enclosure through the open gate and climbed the tower and, as a result, was injured when he came in contact with a high tension wire. All that was needed in order to make the condition inaccessible to children was for a lock to have been placed on the gate panel. This Court held that the defendant was liable for its negligence in failing to protect against this condition.

The present situation is quite analogous to *Bartleson*. There the defendant had constructed a gate and fence but failed to properly lock it thereby providing access to trespassing children. Here, the appellant took a precaution which from the record appears to be wholly inadequate. There is no duty on the owner or possessor of land to make a dangerous condition "child proof"; however, the mere signifying of an inadequate precaution as an "anti-climb" device does not satisfy the requirement laid out by Section 339(b). Here the defendant was aware of the presence of children in the area. He was under a duty to take *reasonable* precaution to prevent accessibility to this condition. The record proves that he failed so to do. It is quite clear that there was sufficient evidence to justify the jury's determination that the appellant should have been aware of this condition and realized the risk which was involved to trespassing children.

There also was ample evidence that the minor appellee did not discover the condition or realize the risk involved. The credibility of the minor appellee was clearly for the jury, which found by its verdict that he did not realize or at best imperfectly realized the exposure to danger. *Bartleson v. Glen Alden Coal Co.*, supra. The appellant contends that the "anti-climb gate" and the presence of high voltage wires overhead served as a warning to the minor appellee and that he should have realized that this was a dangerous condition. Even assuming this to be correct, the con-

dition here which caused the injury was not one of which it might be said that the appellee was aware. Here he was injured because of two drop wires running on the platform which was easily accessible from the ladder, and not because of the high tension wires which were strung above the platform. As the testimony in the record shows, this tower had been climbed many, many times in the past without any injury occurring. A jury could properly conclude from this that the minor appellee would reasonably assume that no danger existed because of the successful climbs in the past. As we stated before, there was ample evidence to allow the jury to conclude that subsection (c) was fully satisfied.

Appellant further contends that the utility of the catenary pole is not slight as compared to the risk involved to trespassing children and therefore the requirement of sub-section (d) of Section 339 was not met by the appellees. During trial the appellees introduced a great deal of testimony as to the feasibility and costs of four alternative precautions which the railroad could have taken in order to safeguard this condition: (1) provide a heavier and safer insulation for the drop lines; (2) post warning signs; (3) remove the ladder; (4) erect a fence around the pole.

Appellant admits that the cost of these precautions in regard to any one pole is slight; however, he urges that it would be necessary to erect similar safeguards around every pole of this type (appellant maintains 844 of these poles along its right-of-way), and hence the cost would be prohibitive. The appellant relies on *Dugan v. Pennsylvania Railroad Co., supra,* where a minor plaintiff sustained severe electrical burns when he climbed to the top of defendant's train stopped temporarily for a signal. The wire involved was the catenary wire from which the current flowed to the train while the boy stood atop a box car. It was

pointed out in that case that these wires could not be more heavily insulated as it would be impossible for the railroad to function. There is also evidence which was noted by the court that identical trespassing (crossing over cars) occurred along the entire New York-Washington run and that there had been four prior electrical accidents at different locations. Plaintiff in that case maintained that the right-of-way should have been fenced or that the train crew should have protected the children. This Court held that there was a failure to satisfy clause (d) because it would be impossible for the railroad to function if the catenary wire were insulated and the only alternative was for the railroad to fence or patrol the *entire right-of-way* to prevent trespassing on trains in transit and this would be an unreasonable burden. The *Dugan* case is clearly distinguishable from the facts presented by this appeal. There is absolutely no evidence in the record which shows that trespassing children were present or in the vicinity of any of the other 844 signal transmission poles. The only pole which required these safeguards would be the one at which the injury occurred because this is the only one which was shown to be frequented by trespassing children. Also, in *Dugan* the catenary wire involved ran the entire length of the New York-Washington line and could not be insulated properly because to do so would interfere with the current which directly ran the trains. Here, however, the wires involved were only thirty-one inches long and could have been insulated without any interference with their function.

It is not for this Court to say which of the safeguards the appellant should have taken. Suffice it to say that insofar as the only precaution which the railroad took proved to be wholly inadequate for the purpose, something more should have been done.

For the above cited reasons the denial of the appellant's motion for a judgment n.o.v. was properly granted by the trial court.

The appellant also argues that the trial court was in error in refusing to grant its motion for a new trial. It claims that it was reversible error for the court below to admit evidence that after the accident defendant attached to the tower in question signs reading "Danger, Live wire, Keep off."

The law of this Commonwealth is clear that evidence of subsequent repairs or precautions is not admissible for the purpose of proving antecedent negligence. *Baran v. Reading Iron Co.,* 202 Pa. 274, 51 Atl. 979 (1902). Appellant's argument was more than adequately handled by the court below when it said: "A detailed review of the record discloses that such evidence was admitted for the special purpose of demonstrating to the jury one of the precautionary steps, which could have been taken by defendant without hindering its operation if the jury found that any such measure was required. The jury was carefully instructed to so regard it at the time it was introduced into evidence. The limited scope of the item of proof was plainly set out to the jury in careful instructions by our President Judge EUGENE V. ALESSANDRONI who presided over the trial. We believe the jury to have been adequately apprised that the testimony had no bearing on antecedent negligence but was only to show a caution which was not costly or burdensome to the defendant in relation to the risk or danger involved.

"In citing Baran v. Reading Iron Co., 202 Pa. 274, defendant ignores the restricted and qualified basis for admission of the evidence and testimony as to its subsequent conduct in erecting signs. The court carefully and painstakingly instructed the jury that it was not to regard this as evidence of prior negligence. The offer

of proof in the Baran case, supra, demonstrated the sole purpose of the evidence of subsequent conduct was to establish antecedent negligence. In distinguishing the cases treating this point the Supreme Court in the Baran case stated: '. . . The reception of this kind of testimony is undoubtedly sanctioned by some of our cases, but in most of these cases the testimony introduced was not of sufficient importance to require a reversal, or there was some ground for its introduction, other than that it tended to show antecedent negligence. . .'

"This statement illustrates recognition by the Court that such testimony is admissible for purposes other than to prove prior negligence. That this is the law is further borne out by O'Brien v. Jeanette Borough, 128 Pa. Superior Ct. 443, where testimony that employes of defendant borough fenced in the hole after an accident in which a pedestrian fell in it was held admissible to show that the Borough had control over the location.

"The general principle is that evidence is admissible if it is competent for any purpose; as a corollary of this rule, evidence may be considered for any purpose for which it is competent: Morse Boulger Dest. Co. v. Arnoni, 376 Pa. 57, 65.

"We conclude that the evidence as qualified was properly admitted in this case, and no prejudice can be said to flow from this ruling by the Trial Judge under his careful instructions."

Finally, appellant argues that a new trial should be granted on the ground that the verdicts in favor of the minor appellee in the sum of $65,000 and in favor of the mother in the sum of $7,000 were excessive. After a careful review of the record it is our conclusion that the trial court did not abuse its discretion in allowing the verdicts to stand due to the extreme nature of the injuries suffered by the minor appellee.

For these reasons the lower court was not in error in refusing to grant appellant's motion for a new trial.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BENJAMIN R. JONES:

I dissent from the action of the majority of the Court in affirming the refusal of the court below to enter a judgment n.o.v. in favor of the defendant.

The result reached by the majority, in my opinion, constitutes a completely unwarranted and unjustified extension of the rule laid down in *Bartleson et al. v. Glen Alden Coal Co.*, 361 Pa. 519, 64 A. 2d 846. The record is clear that the defendant had taken all precautions reasonably necessary to guard against the intrusion of children upon the platform on which its electrical transformer and wires were located. Under the majority ruling the defendant is required to make the platform and electrical transformer absolutely "child proof"; this requirement is wholly and practically unreasonable and tantamount to the imposition of liability on the defendant no matter the extent to which it has taken precautions to protect its electrical devices from trespassing children.

If this be the law, whenever a child and an electrical device come in contact, regardless of the extent of care exercised by a defendant to avoid the possibility of such contact, liability will be fastened upon the defendant.

Mr. Chief Justice CHARLES ALVIN JONES joins in this dissenting opinion.