# A. Schulman, Inc. *v.* Baer Company, Inc., Appellant.

Argued September 18, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before McCready, P. J.

*Joseph M. Smith,* with him *John P. Lavelle,* and *George A. Shutack,* for appellant.

*Joseph H. Foster,* with him *Martin H. Philip,* and *White & Williams,* for appellee.

OPINION BY WATKINS, J., March 21, 1962:

This is an appeal from the judgment of the Court of Common Pleas of Carbon County, in an assumpsit action, in favor of A. Schulman, Inc., the plaintiff-appellee, and against The Baer Company, Inc., the defendant-appellant, in the amount of $2311.15 with interest in the amount of $500 for merchandise; and from the refusal of the court below to grant judgment n.o.v.

The facts must be viewed most favorably to the plaintiff-appellee. *Hyndman v. Pennsylvania Railroad Co.,* 396 Pa. 190, 152 A. 2d 251 (1959). These facts are as follows: Plaintiff, A. Schulman, Inc., is an Ohio corporation engaged in business as a broker and dealer in rubber, scrap rubber and plastic materials throughout the United States and most parts of the world. In late June or early July of 1955, Marvin Fox, a salesman for plaintiff for some ten years, while in his office in New York City, received a telephone call from one Murray Wallet. Mr. Wallet stated that he represented Montour Products Company, a pillow manufacturing concern located in Turbotsville, Pennsylvania, and that his company was interested in purchasing foam rubber, scrap rubber, thread and material of that type to be used in the manufacture of pillows. Mr. Fox then sent samples and a price list to Mr. Wallet.

Shortly thereafter Mr. Wallet again telephoned Mr. Fox and attempted to place an order. Mr. Fox refused to accept the order, stating that he would first have to

check Montour Products' credit. About a week later Mr. Fox telephoned Mr. Wallet and told him that Montour Products' credit rating was such as to prohibit a sale to it. Mr. Wallet then asked Mr. Fox if he could sell to The Baer Company, Inc., of Lehighton, Pennsylvania, the defendant herein. Mr. Fox said he would check Baer Company's credit rating.

About the middle of July, 1955, Mr. Fox again telephoned to Mr. Wallet, telling him that Baer Company's credit was satisfactory. During this telephone conversation, Mr. Wallet, in response to Mr. Fox's question, told Mr. Fox that Montour Products was operating as a branch of Baer Company and that that was why he had suggested this procedure. Mr. Fox told Mr. Wallet that he would have to have confirmation of Mr. Wallet's order from the Baer Company before he could make the sale.

In the latter part of July or early in August, 1955, Mr. Fox received a telephone call from Carlos Baer, president of Baer Company. Mr. Baer told Mr. Fox that he had been in touch with Montour Products and that he authorized Schulman, Inc., to sell materials to Baer Company, to send the bills to Baer Company at its office in Lehighton, but to send the materials themselves to Montour Products in Turbotsville. Mr. Baer further told Mr. Fox to accept orders and shipping instructions from Mr. Wallet, but to send a written confirmation of each order and an invoice of the goods to Baer Company.

Two or three days later, before Schulman, Inc., had shipped any goods to Montour Products, Mr. Fox placed a person-to-person telephone call to Mr. Carlos Baer at the Baer Company. This he did to assure himself that the "Carlos Baer" who had telephoned to him was in fact Carlos Baer, president of Baer Company. When his call was placed he received the assurance he sought by recognizing Mr. Baer's voice and because

Mr. Baer evidenced complete familiarity with the matters discussed during the prior conversation.

Thereafter, from August 16 to December 27, 1955, a period of four months and eleven days, Schulman, Inc., on ten different occasions shipped varying quantities of goods to Montour Products. In each case, as it received an order, Schulman, Inc. sent a written confirmation to Baer Company, and as each order was shipped, some two or three days after receipt, an invoice to Baer Company. Each of the orders was given to Mr. Fox by Mr. Wallet over the telephone; at no time was any written order sent to Schulman, Inc.

Between September 27 and December 9, 1955, on six separate occasions Schulman, Inc. received part payments of the money owed it. Plaintiff was unable to say who had made these payments. Schulman, Inc.'s bills for the ten shipments totaled $7096.49; the six payments received by it totaled $6287.44.

During this period, after the bills became overdue, Mr. Fox on six to eight occasions telephoned Mr. Baer, asking for payment. Mr. Baer stated that money was short, but that given a grace period, he would see that the bills were paid; another time, Mr. Baer promised to make regular weekly payments of $250. It does not appear that Mr. Fox at any time ever spoke to anyone other than Mr. Baer about the overdue bills.

The sole question raised by appellant is whether a corporation can be held to have ratified an unauthorized act of its president by not communicating its disavowal of the act to an interested third party when the only member of the corporation who knows of the act is the president himself. The Baer Company, Inc. was a family corporation of which Carlos Baer owned three per cent. of the stock in his own right, the other ninety-seven per cent. of the stock was owned by his mother's estate in which Carlos Baer together with his brothers and sisters had each a one-sixth interest. Carlos Baer

was the president of the company, the other brothers and sisters being members of the Board of Directors and apparently officers of the company. Carlos Baer was the one intrusted with the operation of the business, purchasing whatever the company needed, paying the bills, and was held out generally as being the Baer Company. Carlos Baer was also a stockholder and officer in Montour Products Company, Inc., and was actively interested in that business.

What Carlos Baer did in this matter on behalf of the Baer Company, Inc., is not uncommon, as one corporation often purchases materials for another company and it is also not uncommon for one corporation to have subsidiary corporations which are in some other unrelated business, so that the appellee, A. Schulman, Inc. would not be put on guard by what took place in this matter.

The question as to the authority of Carlos Baer to act on behalf of the corporation and whether this act is within the apparent or actual authority of Mr. Baer acting as president of the corporation is a question which was properly submitted to the jury for determination. See *Severance v. Heyl & Patterson, Inc.,* 123 Pa. Superior Ct. 553, 187 A. 53 (1936) ; *Osborne v. Victor Dairies, Inc.,* 138 Pa. Superior Ct. 117, 10 A. 2d 129 (1939) ; *Farneth v. Commercial Credit Co.,* 313 Pa. 433, 169 A. 89 (1933). The general rule was stated in *Allen v. France Packing Co.,* 170 Pa. Superior Ct. 632, 90 A. 2d 289 (1952), as being "Where officers of a corporation surrender to the president the management and control of its affairs, and permit him to exercise unrestrained authority for a long period of time, the corporation may be liable for his acts. . . . Prima facie, the officer so entrusted with authority, may be taken to have power to do any act which the directors could authorize or ratify." The foregoing is very often the case in small closely held corporations.

In the present case we have the further problem as to whether the corporation did ratify the act of its president by its failure to give any notice to A. Schulman, Inc., or do any other act with regard to this transaction after the invoices and bills for the material purchased were sent to the Baer Company, Inc., and received by Carlos Baer, its president.

The corporation can acquire knowledge or notice only through its officers and agents, and the rule that notice to an agent is notice to the principal when it is the duty of such agent to act upon the notice or communicate it to his principal in the proper discharge of his duty as agent applies as well to the agents of corporations as to others. *Stewart v. General Accident Ins. Co. of Philadelphia*, 39 Pa. Superior Ct. 396 (1909).

The appellant, however, seeks to avoid the application of the above rule by stating that notice was received by Carlos Baer, the president, who was the officer or agent acting outside the scope of his authority and thus this would not be notice to the corporation. If this were to be accepted then it would be impossible to give notice to this corporation concerning this transaction, no matter how the plaintiff-appellee would attempt to do so, since there was no inter-departmental activity in the corporation and Carlos Baer carried on the business as general manager and president and did all other things on behalf of the corporation and would have received whatever notice would be given to the corporation. The jury, however, found that notice was in fact received by way of the bills and invoices which were sent to the Baer Company, Inc., as requested and the corporation should be bound by this notice and was properly held to have ratified the action which was taken.

Judgment affirmed.

FLOOD, J., concurs in the result.