## Felger et al., Appellants, *v.* Duquesne Light Company.

Argued October 5, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

reargument refused March 1, 1971.

*J. Jerome Mansmann*, with him *P. J. McArdle*, for appellants.

*Robert E. Wayman*, with him *Wayman, Irvin, Trushel & McAuley*, for appellee.

Opinion Per Curiam, January 26, 1971:

The Court being equally divided, the Judgment N.O.V. entered by the Court of Common Pleas is affirmed.

Mr. Justice Jones would affirm the Judgment of the Court of Common Pleas.

Mr. Justice Pomeroy would affirm the Judgment on the basis of the Opinion of Judge McKenna for the Court en banc.

Mr. Justice Cohen took no part in the decision of this case.

———

Opinion in Support of Affirmance of the Judgment N.O.V. by Mr. Chief Justice Bell:

I agree with the decision of the lower Court, which entered a Judgment N.O.V. The pole in the playground

area had been in the same position for eleven years without any injury to anyone, and plaintiff admitted he knew he had no business on the pole, and that it was dangerous for him to be on the pole. I believe that all of the Court agree that defendant is not an insurer. Under all the facts of this case, and after eleven years without injury to anyone, the defendant should not be held liable for plaintiff's injury.

I would affirm the Judgment N.O.V.

———

OPINION IN SUPPORT OF THE REMOVAL OF THE JUDGMENT N.O.V. BY MR. JUSTICE ROBERTS:

In my view, the court en banc's judgment for appellee, notwithstanding a verdict in appellants' favor of $75,000 for the minor appellant and $3,100 for his mother in her own right, was erroneous.

It is settled that in reviewing judgments n.o.v. the court must consider the evidence in the light most favorable to the verdict-winner, resolving all conflicts in his favor and giving him the benefit of all inferences arising from the evidence. See, e.g., *Collins v. Hand,* 431 Pa. 378, 246 A. 2d 398 (1968) ; *Gillingham v. Patz,* 429 Pa. 308, 239 A. 2d 287 (1968) ; *Allison v. Snelling & Snelling, Inc.,* 425 Pa. 519, 229 A. 2d 861 (1967) ; *Hyndman v. Pennsylvania Railroad Co.,* 396 Pa. 190, 152 A. 2d 251 (1959).

The record supports the following facts. On the evening of May 13, 1966, the thirteen-year-old minor appellant, William E. Felger, Jr., was playing in a parking lot at a dead end of a residential street, 150 yards from a school. The lot had been used, weather permitting, practically everyday for over twenty-seven years as a playground for children, and was especially suitable for that purpose because of the lack of traffic. William had lived in the neighborhood for about a year, and had played in the lot often.

At about 8 P.M. William climbed a pole on which the Duquesne Light Company had strung certain electrical wires. William came into contact with the high voltage wires, which were weatherproofed but uninsulated, and fell to the ground, severely injured. He was hospitalized for five weeks, underwent five operations, and lost the middle finger of his left hand and the index finger and one-half of the middle finger from his right hand.

The pole had been installed by Duquesne Light eleven years prior to the accident. It had not been inspected after its installation. No signs or other warnings were posted around the pole, nor was there any fence or other obstruction to discourage climbers. The first rung on the pole is 7 feet 6½ inches from the ground. However, there is a wall 3 feet 5 inches from the pole, on which children usually played. The distance from the top of the wall to the first rung is 7 feet. William was 5 feet 4 inches tall at the time of the accident and weighed 105 pounds. Both William and other children who witnessed the accident testified that he had no trouble in reaching the first rung of the pole from the wall. Also, William testified that he had received no warning about the dangers of electricity or climbing telephone poles, although he admitted he knew he had no business on the pole. He further asserted that previously he had climbed other poles in the area, but never the pole from which he fell. There was evidence that the other two poles on the playground lot carried no high voltage.

The trial court granted a judgment n.o.v. because, in its view, all the elements of Section 339* of the Restatement (Second) of Torts (1965) had not been ful-

---

* Section 339 of the Restatement (Second) of Torts was specifically adopted as the law of the Commonwealth in this situation in *Jesko v. Turk*, 421 Pa. 434, 219 A. 2d 591 (1966).

filled. Section 339 provides: "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

Specifically, the trial court held that Duquesne Light was not liable because Section 339(e) had not been satisfied. Thus, the initial issue to be determined is whether, as a matter of law, Duquesne Light exercised reasonable care to eliminate the danger, or otherwise took steps to protect the children.

Although a supplier of electricity is not an insurer against all injury, it owes the highest degree of care to all parties who might be harmed. *Skoda v. West Penn Power Co.*, 411 Pa. 323, 328, 191 A. 2d 822, 825 (1963). See also *Thompson v. Penna. Power Co.*, 402 F. 2d 88 (3d Cir. 1968) (applying Pa. law) ; *Kube v. Bethlehem Steel Corp.*, 390 F. 2d 506 (3d Cir. 1968) (applying Pa. law).

The sole evidence offered by Duquesne Light of protective measures taken for the children is the height of the first rung, which was 7 feet 6½ inches from the

ground. Yet William and the children who witnessed the accident testified that, although he was of average height for his age, William was able to reach the rung from the wall adjacent to the pole with ease, and without jumping. I reiterate that in reviewing a judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner. The record clearly supports the proposition that the height of the rung was in no way a hindrance, much less a warning to children playing in the area.

Further, there was no fence, or insulation, or any other means of alerting the children to, or protecting them from, the danger of these high voltage wires.

The comment to clause (e) of Section 339 states: "Under some circumstances, a warning to the children is all that can be expected of a reasonable man in the defendant's position." The comment indicates that a warning is the *minimum* precaution that should be taken by an electrical supplier, when his facility is in an area habitually frequented by children. No warning existed here, and it cannot be stated as a matter of law that appellee here exercised the degree of care necessary to avoid liability in this situation, as required by clause (e) of Section 339.

The instant case is analogous to this Court's decision in *Hyndman v. Pennsylvania Railroad Co.,* supra. There, despite an "anti-climb gate" installed by the defendant, an eleven year old plaintiff climbed a ladder on defendant's catenary pole which led to a steel platform on which a transformer apparatus was affixed. He touched a wire and was severely burned. This Court affirmed the denial of a judgment n.o.v., observing that the area had been used as a boy scout campsite for some time, and that the "anti-climb gate" was an insufficient precaution. If a gate is not enough, surely the existence of a rung within easy reach of a boy when he stands on a wall is insufficient.

As to the other elements of Section 339, the following should be noted:

Clause (a) is satisfied because there is unquestionably ample evidence that Duquesne Light had, or should have had notice that the lot was used as a playground by the neighborhood children, and that also they played along the wall.

Clause (b) is satisfied because the wires carried 2400 volts of electricity. Although they were only two feet long and well off the ground, anytime easily accessible uninsulated wires of such high voltage are mounted in an area where children customarily play, without any warning sign or other protection, an unreasonable risk is created. Appellee argues that the record demonstrates that it had no reason to know that children would trespass on the pole. Duquesne Light never inspected the pole or the surrounding area in the eleven years following its installment. There was evidence that children had been climbing the other two poles in the immediate playground area for some time, neither of which contained high voltage wires. Nothing existed to distinguish the dangerous pole. Such a condition creates an unreasonable risk.

As to clause (c), there was ample evidence that the minor appellant did not discover the dangerous condition or realize the risk involved. His own testimony so indicated. "The credibility of the minor . . . [appellant] was clearly for the jury, which found by its verdict that he did not realize or at best imperfectly realized the exposure to danger. Bartleson v. Glen Alden Coal Co., [361 Pa. 519, 64 A. 2d 846 (1949)] . . . ." *Hyndman v. Pennsylvania Railroad Co.,* supra at 197, 152 A. 2d at 255.

Clause (d) is also clearly satisfied. The comment to that clause states: "While wires are necessary to carry high-tension electric current, the burden of prop-

erly safeguarding wires maintained at places where trespassing children may be expected to come into contact with them is obviously slight as compared with the gravity of harm which they threaten and the chance that such harm will result." Reasonable care does not require that electrical suppliers make their high voltage wires "child-proof"; nor does it require that all wires be insulated and inaccessible. However, when the high voltage wires are on an easily accessible pole in an area traditionally used by children as a playground, and no sign or other warning is apparent to distinguish the dangerous pole from the other harmless poles in the area, some precaution must be taken *as to that particular dangerous pole.* "It is not for this Court to say which of the safeguards the . . . [appellee] should have taken. Suffice it to say that insofar as the only precaution which the . . . [electrical supplier] took proved to be wholly inadequate for the purpose, something more should have been done." *Hyndman v. Pennsylvania Railroad Co.,* supra at 199, 152 A. 2d at 256.

Appellee argues that Section 339 should not apply in this case because Duquesne Light Company was not the possessor of the land—the land being owned by the Duquesne Mining Company. However, the trial court was correct in reasoning that because Duquesne Light had an easement and was required to maintain the pole, it should be held to the same liability as a possessor in this case. See Section 383, Restatement (Second) of Torts.

The judgment n.o.v. should be vacated, and the verdict of the jury reinstated.

Mr. Justice EAGEN and Mr. Justice O'BRIEN join in this opinion.