**Charlesetta REDD, a minor, by her Father and Next Friend, Charles LINDSAY, Appellant,**

v.

**Donald M. NEAL, Respondent.**

**No. WD 34733.**

Missouri Court of Appeals, Western District.

March 27, 1984.

J. Kirk Rahm, Warrensburg, for appellant.

William J. Cason, Michael X. Edgett, Fred R. Bunch, and James C. Johns, Clinton, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

This is an appeal by a plaintiff in a personal injuries case from a judgment entered upon an adverse jury verdict. We affirm the judgment.

Plaintiff was a nine-year-old child who lived with her father and a woman in a mobile home belonging to the defendant. She was injured when she accidentally stepped into a cleft, four or five inches in width between the exterior door of the mobile home and the wooden stoop from which one descended by two or three stair steps to the ground. The stoop and stairs had never been permanently attached to the structure. They were built on a frame of angle iron, with angle iron legs set in the ground to a shallow depth. The cleft had been there during the entire 14 months they had lived there, according to plaintiff's father, but plaintiff testified that she had never seen the gap before she stepped into it, resulting in the injuries for which the lawsuit was brought. It is not necessary to go any more into the details of the evidence, since the disposition of this appeal turns upon other issues.

Appellant on this appeal makes two allegations of trial court error which she says require a new trial.

■ The first of the alleged errors grows out of a jury voir dire incident. Plaintiff's attorney, Mr. Rahm, explained to the jury panel that the lawsuit was brought by plaintiff's father as her next friend. He said: "He is not the guardian appointed by the court but what we call next friend, which is part of the lawsuit in this case." Later defense attorney told the jury panel: "Now, the fact is that the suit is brought by Charlesetta Redd with her father as next friend, first appointed by the court to receive any money if any is received." Later still, in response to a follow-up voir dire question by plaintiff's counsel, an outspoken venirewoman announced in the hearing of the panel that she was "getting the idea because she was hurt, he is trying to make a little money, to put it quite bluntly, off this thing". This exchange followed:

THE COURT: Miss Buchanan, you have already answered the questions prior. I think that will be sufficient. Thank you.

MR. RAHM: She has brought up something that I think is important. Any money that might be recovered in this case, if she is entitled—

MR. CASON: If the Court please, this is not voir dire what he is getting into at this time.

THE COURT: Come up, please.

Mr. Rahm then asked the court out of the jury's hearing to tell the jury that any money recovered by the plaintiff would be solely for her benefit. The court, however, gave the following direction:

Ladies and gentlemen of the panel, in order that any misunderstanding, if any there be, be cleared up, the Court instructs the jury that the Plaintiff in this case is Charlesetta Redd and Charlesetta Redd is bringing an action for recovery of money for damages and injuries that she allegedly has suffered as set out in the—as will be set out in the evidence in this case. That the action is hers and that she is the Plaintiff, no one else is the Plaintiff in this case seeking recovery.

The court then directed counsel to proceed to another subject. Plaintiff's contention here is that the court erred in not telling the jury that any money awarded to the plaintiff could be used only for her benefit, as she had requested.

This is one of those trial incidents which are left to the trial judge to deal with in his discretion. It would perhaps have been in order for the trial judge to give the kind of explanation requested by plaintiff's attorney, namely, that the proceeds of any judgment could properly and legally be used only for her benefit. On the other hand, we cannot say that the trial court's admonition to the jury, which was calculated to remove from the jury's consideration any spurious issue about the role of the next friend, was not effective for that purpose. The jury would certainly understand, with

or without the court's admonition, that the money would be placed in the care of some adult and would not be paid directly to the child. We believe that the trial judge was in the best position to assess the possible confusion and prejudice to plaintiff stemming from the next friend's role, and we find no abuse of discretion in his handling it as he did. Appellant's first point is therefore denied. *Barnes v. Marshall,* 467 S.W.2d 70, 76 (Mo.1971); *Rovak v. Schwartz,* 339 S.W.2d 756, 758 (Mo.1960).

■ Appellant's second point is that the court erred in refusing plaintiff's tendered verdict-directing instruction patterned after MAI 22.01. The tendered instruction is copied into the margin.[1] The court gave instead a verdict-directing instruction patterned after MAI 22.07 entitled in Missouri Approved Jury Instructions as "Verdict Directing-Licensee". Appellant's criticism of the verdict-directing instruction that was given is simply that it placed a greater burden upon plaintiff than her refused instruction would have placed upon her, in requiring the jury to find that "plaintiff did not know and by using ordinary care could not have discovered that such condition was not reasonably safe." Plaintiff, while conceding that the MAI 22.07 instruction was also applicable to the pleadings and the evidence, says it was her prerogative to submit her case upon an alternative theory, to wit, the MAI 22.01 theory. Plaintiff's position is a valid one if the submission theory she selects is supported by the pleadings and the evidence. *Robinson v. St. John's Medical Center,* 508 S.W.2d 7, 12 (Mo.App.1974); 88 C.J.S. Trial § 301(b) (1955). If we determine, therefore, that plaintiff was not entitled to the refused instruction, that will resolve the question.

The court was correct in refusing plaintiff's instruction patterned after MAI 22.-01. The evidence did not support a submission under that instruction. By that instruction the jury is required to find that the defendant knew or had reason to know that children would be exposed to the condition maintained by the defendant, and that he knew or should have known it "presented an unreasonable risk of harm to children exposed to it". The key words are: "to children".

A four- to five-inch gap between an exterior door and the wooden stoop poses no unreasonable risk of harm peculiar to children. The instruction is designed to fit those cases where the hypothesized condition poses a danger which is peculiar to children. It is to be used in those cases described in Restatement (Second) of Torts § 339A (1965). That this type of case for which MAI 22.01 is designed is clear from the Committee's comment on the pattern instruction. The cases cited by appellant bear this out.

*Salanski v. Enright,* 452 S.W.2d 143 (Mo.1970), involved a fall from a treehouse maintained by the defendant. Wrote Judge Seiler:

Here we have a treehouse, approximately 30 feet above the ground, located in the smaller branches of the tree and alleged to be dangerous to ascend and descend. The season was the middle of summer, when the leaves would ordinarily be the thickest. A treehouse in the smaller branches of the tree would be less stable and more easily moved by the weight of its occupant or by the breezes. Most of us can recall as children the delight and allure of a treehouse. It is a

---

1. Your verdict must be for plaintiff if you believe:

First, defendant maintained a steps platform next to the mobile home with an excessive space between the steps platform and the mobile home, and

Second, defendant knew or had reason to know children would be exposed to it, and

Third, defendant knew or should have known it presented an unreasonable risk of harm to children exposed to it, and

Fourth, plaintiff, because of her youth, did not appreciate the risk of harm associated with it, and

Fifth, defendant failed to prevent plaintiff from being exposed to such harm, and

Sixth, defendant was thereby negligent, and

Seventh, as a direct result of such negligence, plaintiff was injured, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 8.

special attraction, a sort of leafy cavern, the higher the better, where a child can have his own private domain. Children are frequently inattentive to their surroundings and the desire of getting to and enjoying the treehouse could be so distracting that plaintiff would not discover or appreciate the danger involved in a treehouse 30 feet above the ground and in the smaller branches.

452 S.W.2d at 145.

In *Anderson v. Cahill,* 485 S.W.2d 76 (Mo.1972), the four-year-old plaintiff was injured by falling into an excavation at a construction site. The construction site was on premises which included an elementary school with approximately 400 students, and was in a residential area. Plaintiff's family residence was about 150 feet from the edge of the construction site. The negligence charged was the failure to fence sufficiently to keep children out.

In *Crawford v. Pacific Western Mobile Estates, Inc.,* 548 S.W.2d 216 (Mo.App. 1977), the condition which caused the death of the six-year-old son of the plaintiffs was a settlement tank resembling a swimming pool, 25 feet long and 11 feet wide. The plaintiffs lived in the trailer park, where also a number of other children lived. The negligence charged was in allowing a pile of concrete blocks to form a stairway by which a child could get over the fence enclosing the sewage treatment area and in failing to have the tank covered. In the latter case, Judge Wasserstrom carefully traces the development of the Restatement Sec. 339 doctrine, of which MAI 22.01 is a hypothesis, to its roots in the attractive nuisance doctrine. The existence of a dangerous condition is not enough; it must have "distracting factors [which] are sufficient to prevent the trespassing[2] child from realizing the risk." 548 S.W.2d at 222. That feature is missing here.

**2.** While the cases speak of a "trespassing" child, it is held in *Salanski v. Enright,* 456 S.W.2d 143, 145 (Mo.1970), that the injured child may be a "licensee" and come within the protection of Sec. 339. For the purposes of the case before us

It follows that the court did not err in refusing plaintiff's tendered instruction.

The judgment is affirmed.

All concur.

it is not necessary for us to determine what the injured child's status was, or whether her relationship to the premises removed her from the Sec. 339 category.